Standard Lumber and Hardware Company (Formerly Standard Wrecking & Lumber Co.), v. Commissioner.
Standard Lumber & Hardware Co. v. Commissioner
Docket No. 66076.
United States Tax Court
T.C. Memo 1958-159; 1958 Tax Ct. Memo LEXIS 68; 17 T.C.M. (CCH) 796; T.C.M. (RIA) 58159; August 26, 1958
*68 Stanley L. Drexler, Esq., and Joe S. Reynolds, Esq., for the petitioner. Richard G. Worden, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income tax, as follows: Taxable Years
Ending Oct. 30
1951
$3,152.25
1952
5,877.43
1953
3,648.04
1954
4,608.28
The only issue is whether the petitioner is entitled to deductions for amortization of an agreement, of a former partner in the business, not to compete. Findings of Fact The petitioner, a Colorado corporation, filed its income tax returns for the taxable years ended October 31, 1951 through 1954, in the district of Colorado. A written partnership agreement was executed on January 2, 1946, to carry on for 20 years a lumber, hardware and wrecking business under the name of Standard Wrecking & Lumber Co. The partners and their capital interests and shares in profits and losses were as follows: Per Cent
Walter M. Horkans
27 1/2
Joseph L. Scavo
27 1/2
William V. Scavo
22 1/2
Leo J. Scavo
22 1/2 The Scavos were brothers. Each partner was to devote his full time to the business. *69 Paragraph 14 of the agreement was as follows: "Upon the dissolution of the partnership, by reason of the death, withdrawal or other act of either partner before the expiration of said partnership term, the remaining partners may, if they so desire, continue the business, and they shall have the right to purchase the interest of such partner in the business, assets, not including good will which shall not be capitalized unless by a unanimous agreement, by paying the value of such interest as determined by the last annual inventory and accounting, together with six per cent interest upon such value from such inventory and accounting date to date of transfer. Upon such payment the retiring partner or his representatives shall execute and deliver to the remaining members all necessary conveyances of such interest. The continuing members shall assume all the existing firm obligations, and hold the sellers harmless from all liability thereon. The continuing partners may use the former firm name provided that the name of the retiring partner is not used or held out to the public generally." Disagreements arose and Joseph offered to sell his interest to Horkans and agree not to compete *70 for 5 years for $60,000 and offered on behalf of himself and his two brothers to pay Horkans $70,000 for his interest and agreement not to compete for 5 years. Horkans was unable to raise the money to buy Joseph's interest and accepted the offer to buy his interest. His interest in the partnership at that time as shown on the partnership books was $32,587.22. A dissolution agreement was executed dated May 7, 1949, Horkans endorsed the January 2, 1946, partnership agreement and a certified check for $70,000. Each of those documents recited that the $70,000 was for Horkans' interest in the partnership but contained no reference to any agreement not to compete. The Scavos, as partners, continued the business from May 7 to October 31, 1949, and then transferred the business and most of its assets to the petitioner, which was incorporated on November 1, 1949. No claim was made for a deduction for amortization of the cost of an agreement not to compete on the partnership return for the period May 7 to October 31, 1949, or on the original return of the petitioner for its fiscal year ended October 31, 1950, but such a claim was made on the petitioner's amended return for 1950 filed September 22, 1953, and *71 on its original returns for 1951 through 1954. The Commissioner, in determining the deficiencies, disallowed the deductions claimed for amortization of the cost of an agreement not to compete and explained that it was unallowable "because it has not been established that a noncompetitive agreement existed and that such an agreement, even in the event of its existence, would be subject to either depreciation or amortization." All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The decision of this case turns on whether the Court believes the testimony of Joseph, supported to some extent by that of Leo, that there was an agreement with Horkans that he would not compete for 5 years upon consideration of the payment to him of $37,412.78 in excess of the agreed book value of his interest in the January 2, 1946, partnership. The Commissioner points to the facts that there was no written agreement not to compete; the books of the partnership and of the successor corporation reflect no such agreement; no deduction was claimed until the 1951 return was filed on January 15, 1952; and the written documents signed by Horkans at the time of the payment *72 are inconsistent with the existence of any agreement not to compete in that they state that the $70,000 was paid for his inteerst in the partnership and do not refer to any agreement not to compete. Joseph testified that Horkans wanted the agreement to be on their word alone, they agreed and Joseph did not realize that there would be tax benefits and did not learn of them until he changed accountants, the new accountant inquired why Horkans had been paid the $70,000, and, when told that a part was for Horkans' agreement not to compete, advised that deductions should be claimed. The solution is not easy or free from doubt. However, the Court decides this question in favor of the petitioner on the testimony of the two Scavos supported by the provision in paragraph 14 of the January 2, 1946, agreement that upon dissolution by reason of the withdrawal of a partner the remaining partner shall have the right to purchase the interest of the retiring partner at its book value. There has to be some explanation for the payment to Horkans of $37,412.78 in excess of the agreed book value of his interest, and the most logical explanation in this record is that it was paid for his agreement not *73 to compete. Horkans was not called as a witness by either party and the decision must be made on the existing record. The Commissioner argues that an oral agreement not to compete for 5 years would be void in Colorado. The Commissioner cites no authority for his contention that the deduction would not be allowable if the agreement could not be enforced. A part of the whole agreement was in writing but, in any event, the deduction does not depend upon the law of Colbrado. The fact is that a large sum was actually paid on this arm's length agreement and the evidence indicates that the agreement was carried out. Decision will be entered under Rule 50.